**Reversed and Rendered and Opinion filed July 11, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00263-CV

## TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant

## V.

## PAUL EUGENE FOWLE, Appellee

**On Appeal from the 201st District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-17-005174**

### OPINION

The question in this case is whether a person must register as a sex offender in Texas if he was convicted under an Arizona statute for sexual abuse. Our answer is yes.

### I. Background

Paul Fowle was indicted by the State of Arizona on two counts of sexual abuse. The indictment contained no factual allegations beyond the charge that he

"intentionally and knowingly engaged in sexual contact" with a minor under the age of fifteen in June of 1983. Fowle pleaded guilty to both counts and was sentenced to concurrent terms of two years' imprisonment.

Fowle moved to Texas after serving his sentences in Arizona. Upon his relocation, a question arose as to whether he was required to register as a sex offender in Texas.

The answer to that question turns on an application of the Sex Offender Registration Act (the "Act"), which requires a person to register as a sex offender if he has a "reportable conviction or adjudication." *See* Tex. Code Crim. Proc. art. 62.051(a). A reportable conviction or adjudication includes a conviction from another state if the other state's offense contains elements that are "substantially similar" to the elements of an enumerated Texas offense. *Id.* art. 62.001(5)(H).

The Department of Public Safety ("DPS") is responsible for determining whether the elements of a foreign offense are substantially similar to the elements of a Texas offense. *Id.* art. 62.003(a). DPS determined in this case that the Arizona offense for sexual abuse contained elements that were substantially similar to the Texas offense for indecency with a child. Because indecency with a child is one of the enumerated offenses under the Act, DPS determined that Fowle had a reportable conviction or adjudication and that he was required to register as a sex offender. *Id.* art. 62.001(5)(A).

Fowle appealed DPS's determination to the trial court below, as the Act empowered him to do. *Id.* art. 62.003(c). The trial court granted Fowle's appeal and signed an order stating that his conviction in Arizona was not a reportable conviction or adjudication for purposes of the Act.

DPS now appeals from that signed order.

## II.  Applicable Law

The legislature did not define the phrase "substantially similar," but in *Prudholm v. State*, 333 S.W.3d 590 (Tex. Crim. App. 2011), and then again in *Anderson v. State*, 394 S.W.3d 531 (Tex. Crim. App. 2013), the Court of Criminal Appeals applied a two-pronged test for deciding whether the elements of two offenses were substantially similar. The first prong of that test requires a court to compare the elements of the two offenses and determine whether they "display a high degree of likeness." *See Prudholm*, 333 S.W.3d at 594; *Anderson*, 394 S.W.3d at 535. The second prong requires a court to consider whether the elements are "substantially similar with respect to the individual or public interests protected and the impact of the elements on the seriousness of the offenses." *See Prudholm*, 333 S.W.3d at 595; *Anderson*, 394 S.W.3d at 536.

The parties addressed this two-pronged test in both their trial briefing and their appellate briefing. But during the pendency of this appeal, and after the briefing stage had already closed, the Court of Criminal Appeals overruled *Prudholm* and *Anderson* "to the extent that they imposed the second prong of their test for substantial similarity." *See Fisk v. State*, — S.W.3d —, 2019 WL 2363143, at *6 (Tex. Crim. App. June 5, 2019). The Court explained that the second prong was "unworkable and unnecessary," and that the only relevant inquiry was the first prong. *Id.*

We accordingly limit our analysis to the first prong and do not consider the parties' arguments under the second prong. Because the first prong presents a pure question of law, our review is de novo. *See Anderson*, 394 S.W.3d at 534.

3

## III.   The Arizona Offense

Our analysis begins with the elements of the foreign offense as they existed at the time that the offense was committed. *See Ex parte Warren*, 353 S.W.3d 490, 496 (Tex. Crim. App. 2011).

Arizona's sexual abuse statute provides in pertinent part as follows: "A person commits sexual abuse by intentionally or knowingly engaging in sexual contact . . . with any person who is under fifteen years of age and who is not his or her spouse." *See* Act effective Oct. 1, 1978, 33d Leg., R.S., ch. 142, § 63, 1977 Ariz. Sess. Laws 678, 728 (current version at Ariz. Rev. Stat. § 13-1404).

The phrase "sexual contact" means "any direct or indirect fondling or manipulating of any part of the genitals, anus or female breast." *See* Act effective Oct. 1, 1978, 33d Leg., R.S., ch. 142, § 63, 1977 Ariz. Sess. Laws 678, 728 (current version at Ariz. Rev. Stat. § 13-1401).

## IV.   The Texas Offense

A person commits the Texas offense of indecency with a child "if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person engages in sexual contact with a child or causes the child to engage in sexual contact." *See* Tex. Penal Code § 21.11(a)(1).

The phrase "sexual contact" means "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" if the touching is "committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c)(1).

## V. Comparison of Elements

When deciding whether the elements of two offenses "display a high degree of likeness," we must be mindful of the following three principles. First, the elements can be substantially similar even though they "may be less than identical." *See Prudholm*, 333 S.W.3d at 593–94. Second, to be substantially similar, the elements "need not parallel one another precisely." *See Anderson*, 394 S.W.3d at 535. And third, the possibility that a person could be found guilty of the foreign offense on facts that would be insufficient to prove guilt in Texas does not necessarily foreclose a conclusion that the elements of the two offenses are substantially similar. *See Prudholm*, 333 S.W.3d at 595.

With these principles in mind, we conclude that even though the two offenses are not defined with identical terms or written in parallel form, they nonetheless contain elements that are substantially similar.

The Arizona offense expressly incorporates an intentional or knowing mental state in its statutory definition. In Texas, the defining statute does not expressly identify a culpable mental state, but the *mens rea* is provided elsewhere by a separate statute of general applicability. *See* Tex. Penal Code § 6.02(c) ("If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility."). As in Arizona, an intentional or knowing mental state is sufficient to establish criminal responsibility under the Texas offense of indecency with a child. *Id.*

Turning next to the *actus reus*, both offenses address the same forbidden conduct in that they each proscribe sexual contact with a minor, although the treatment of the minor differs slightly between the two statutory definitions. In Arizona, the minor must have been younger than fifteen years of age at the time of

5

the offense, whereas in Texas, the minor must have been younger than seventeen years of age. This two-year difference does not preclude a determination that the offenses contain elements that are substantially similar. *Cf. Ex parte White*, 211 S.W.3d 316, 318 (Tex. Crim. App. 2007) (concluding that the Delaware offense of unlawful sexual contact was substantially similar to the Texas offense of indecency with a child even though the Delaware offense prohibited sexual contact with a minor under the age of sixteen, as opposed to seventeen).

The Arizona offense also requires affirmative proof that the minor was not the spouse of the accused. The Texas offense does not share this requirement, but the Texas statute provides an affirmative defense in the event that the accused was the minor's spouse. *See* Tex. Penal Code § 21.11(b-1).

From Fowle's perspective, the most significant distinction between the two offenses is in their definition of "sexual contact." In Arizona, that term refers to any "fondling or manipulating" of the genitals, anus, or breast, whereas in Texas, that terms refers to any "touching" of the same body parts "if committed with the intent to arouse or gratify the sexual desire of any person." Because the Arizona definition of sexual contact does not expressly contain an element of specific intent as in Texas, Fowle argues that the elements of the two offenses cannot be substantially similar.

We must reject Fowle's argument for at least three reasons.

First, as we explained above, the elements of the two offenses can display a high degree of likeness even though they may be less than identical. Thus, the omission of a specific intent element in the Arizona offense is not dispositive. The Arizona offense still defines sexual contact with reference to the same three body parts as the Texas definition, which is relevant to our substantial similarity analysis.

6

Second, even though the Arizona offense does not expressly require a showing that a touching was committed with the specific intent to arouse or gratify, the Arizona offense uses the specialized word "fondle" to the exclusion of the much broader word "touch," and we can reasonably imply an element of sexual motivation within the ordinary meaning of that more specialized word.

The word "fondle" has an interesting history. Deriving from the word "fond," its original meaning centers on sentiments of affection and tenderness. *See* The Compact Edition of the Oxford English Dictionary 1043 (photo. reprint 1984) (1971) (defining "fondle" as "to treat with fond indulgence," "to handle or treat with fondness," and "to bestow caresses on"). This meaning is so benign that, in some earlier usages, it was even applied to describe how children handled their toys. *See, e.g.*, *Estelle's Last Wish Was to Fondle Her Doll on Christmas*, Arizona Daily Star, Dec. 15, 1950, at 2B, *available at* https://www.newspapers.com/image/163677886/.

When Arizona's sexual abuse statute was enacted in 1977, Webster's defined "fondle" solely with its original denotation. *See* Webster's New Collegiate Dictionary 446 (1977) ("to handle tenderly, lovingly, or lingeringly" and "to show affection or desire by caressing"); *see also Cadena Comercial USA Corp. v. Tex. Alcohol Beverage Comm'n*, 518 S.W.3d 318, 327 (Tex. 2017) (indicating that a court should refer to dictionaries in print at the time of a statute's enactment). But we know from other historical sources that the word's usage had expanded to also include a sexual denotation.

For example, before the Arizona offense was enacted, "fondle" appeared in Arizona newspapers to describe touchings of a sexual nature. *See, e.g.*, Nicki Donahue, *Drive-In Film May Be Adjudged "Public Nuisance"*, Tucson Daily Citizen, Sept. 12, 1969, at 3 (a bystander objected to the public display of a lewd film where "women disrobe and fondle each other"), *available at*

7

https://www.newspapers.com/image/25727763/; *Dear Abby*, Arizona Daily Sun, Aug. 18, 1969, at 7 (an anonymous person addressed the syndicated columnist to describe how she was sexually abused as a child, writing "Who would suspect that an 'affectionate' uncle would fondle me intimately when I was six?"), *available at* https://www.newspapers.com/image/516091102/; *Slayer of Mrs. Saxon May Be Foot Fetishist*, Arizona Daily Star, Oct. 7, 1962, at A3 (a murderer was described as a "sexual psychopath who likes to fondle women's feet"), *available at* https://www.newspapers.com/image/166455219/; Edwin Diamond, *"Empathy" Saves Grounded Marriage Ships*, Arizona Republic, Dec. 5, 1956, at 31 (a wife described how her husband would come up from behind and "begin to fondle" and kiss her when he was "eager to make love"), *available at* https://www.newspapers.com/image/116725022/.

This sexual denotation was also established in Arizona law no later than 1965, when the Arizona legislature used the word "fondle" in the enactment of a related statute on child molestation. *See* Act effective Mar. 25, 1965, 27th Leg., R.S., ch. 20, § 3, 1965 Ariz. Sess. Laws 24, 25 ("A person who molests a child under the age of fifteen years by fondling, playing with, or touching the private parts of such child or who causes a child under the age of fifteen years to fondle, play with, or touch the private parts of such person shall be guilty of a felony . . . .") (current version at Ariz. Rev. Stat. § 13-1410).[1] Because the Arizona legislature determined that the fondling

---

[1] The Texas legislature enacted a law in 1950 that used the word "fondle" with this same sexual denotation. *See* Act effective Mar. 10, 1950, 51st Leg., 1st C.S., ch. 12, § 1, 1950 Tex. Gen. Laws 52, 52–53 ("It shall be unlawful for any person with lascivious intent to intentionally place or attempt to place his or her hand or hands, or any portion of his or her hand or hands upon or against a sexual part of a male or female under the age of fourteen (14) years, or to in any way or manner fondle or attempt to fondle a sexual part of a male or female under the age of fourteen (14) years . . . ."). That law was codified under Article 535d of the previous version of the Texas Penal Code, which has since been replaced with the current statute for indecency with a child. *See* Tex. Penal Code, Disposition Table 1 (noting that Article 535d was replaced with Section 21.11).

of a child amounted to criminal molestation, we can reasonably assume that the fondling of a child in the context of the sexual abuse statute likewise carries a sexual meaning. Indeed, that is exactly how the Arizona Supreme Court construed it. *See Arizona ex rel. Hamilton v. Superior Court of Maricopa Cty.*, 624 P.2d 862, 865 (Ariz. 1981) (holding that "sexual contact" in the context of a public indecency statute would not extend to "normal bodily functions in a public restroom" because the fondling or manipulating must be "of a sexual nature").

Third, and finally, if the Arizona offense did not encompass some implied element of sexual motivation, whether within the meaning of "fondling" or its statutory companion word "manipulating," then the offense would sweep within its reach a whole range of activity that is traditionally regarded as innocent—like changing a baby's diaper. Notably, the Arizona legislature addressed this matter in 1985, when it created a defense to prosecution that the defendant was *not* motivated by a sexual interest. *See* Act effective May 16, 1985, 37th Leg., R.S., ch. 364, § 16, 1985 Ariz. Sess. Laws 1429, 1444 (codified at Ariz. Rev. Stat. § 13-1407(E), and later repealed by Act approved Apr. 25, 2018, 53d Leg., 2d R.S., ch. 266, § 2) ("It is a defense to prosecution pursuant to Section 13-1404 involving a victim under fifteen years of age that the defendant was not motivated by a sexual interest."). But because Fowle was charged before 1985, this defense was not available to him, or to anyone else with an earlier conviction.

It is inconceivable to think that the Arizona legislature intended for its sexual abuse statute to be applied in a manner where sexual motivation was not present. Yet that is the very argument that Fowle makes in this appeal. In his brief, Fowle asserts that "a mother washing or bathing her own child, if the prosecuting authority wished to apply it this way, would not violate the Texas statute, but would violate the Arizona statute." We cannot accept Fowle's interpretation of the Arizona statute,

9

which is a prime example of an absurd result. Also, there is no indication that the Arizona statute has ever been applied in the manner suggested by Fowle, not even before 1985 when there was no statutory defense for lack of sexual interest. *See Arizona v. Holle*, 379 P.3d 197, 206 (Ariz. 2016) (noting that a diapering parent has never been charged under section 13-1404).[2]

Based on the foregoing, we believe that the elements of the Arizona offense display a high degree of likeness to the elements of the Texas offense, even though the Arizona statute does not contain an express element of sexual intent. *See Prudholm*, 333 S.W.3d at 593–94 (holding that the elements of two offenses can be substantially similar even if there are differences in specific intent). We therefore hold that the offenses contain elements that are substantially similar and that Fowle has a reportable conviction or adjudication for purposes of the Act.

---

[2] The *Holle* court held, by a divided 3-2 vote, that Arizona's sexual abuse statute did not require an element of sexual motivation, but that holding was based on a version of the statute that did not exist at the time of Fowle's conviction. The Arizona legislature reacted to *Holle* by redefining the phrase "sexual contact" so as to exclude any sort of touching that "an objective, reasonable person would recognize as normal and reasonable under the circumstances." *See* Act approved Apr. 25, 2018, 53d Leg., 2d R.S., ch. 266, § 1 (current version at Ariz. Rev. Stat. § 13-1401); *see also* House Summary of HB 2283, *available at* https://apps.azleg.gov/BillStatus/BillOverview/70045 (addressing *Holle* in the legislative history). That legislative judgment brings the definition of "sexual contact" back in alignment with the case law that governed at the time of Fowle's conviction. *See Arizona ex rel. Hamilton v. Superior Court of Maricopa Cty.*, 624 P.2d 862, 865 (Ariz. 1981) (holding that "sexual contact" required a touching "of a sexual nature").

## VI.   Conclusion

We reverse the trial court's order and render judgment denying Fowle's appeal under article 62.003(c) of the Code of Criminal Procedure.


/s/     Tracy Christopher
Justice

Panel consists of Justices Christopher, Hassan, and Poissant.